[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
May 29, 2007
THOMAS K. KAHN
CLERK

No. 06-11383
Non-Argument Calendar

_____

D. C. Docket No. 05-00327-CR-01-JOF-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CONLEY PETERS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(May 29, 2007)**

Before ANDERSON, WILSON and PRYOR, Circuit Judges.

PER CURIAM:

Conley Peters pleaded guilty to one count of possessing a firearm after being

convicted of a felony, in violation of 18 U.S.C. § 922(g)(1). The district court sentenced him to serve 180 months in prison, the minimum sentence the court was able to impose under the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e)(1). ACCA's 180-month mandatory minimum applies to any person who violates § 922(g) and has had three previous convictions "for a violent felony or a serious drug offense." Id. At sentencing, after reviewing the presentence investigation report prepared by the probation office, the district court concluded that Peters was subject to ACCA's mandatory minimum because he had three previous convictions, each of which qualified as a "violent felony."

One of the three felonies that the district court treated as a "violent felony" for ACCA purposes was Peters's 1981 conviction for attempted second degree burglary under Tennessee law. On appeal, Peters argues that the district court miscalculated his sentence because, he says, his 1981 conviction for attempted burglary, as defined by Tennessee law, cannot be considered a violent felony under ACCA.[1] We disagree and therefore affirm Peters's sentence. Our analysis of this appeal tracks the approach set forth by the Supreme Court's recent decision in James v. United States, ___ U.S. ___, 127 S. Ct. 1586 (2007).

---

[1] Peters does not challenge the district court's conclusion that his other two felonies constituted "violent felon[ies]" under ACCA.

The term "violent felony" is defined by ACCA as

any crime punishable by imprisonment for a term exceeding one year . . . that—

(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or

(ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

18 U.S.C. § 924(e)(2)(B).

At the time Peters was convicted, Tennessee defined second degree burglary as follows: "Burglary in the second degree is the breaking and entering into a dwelling house or any other house, building, room or rooms therein used and occupied by any person or persons as a dwelling place or lodging either permanently or temporarily and whether as owner, renter, tenant, lessee or paying guest, by day, with the intent to commit a felony." Tenn. Stat. § 39-903 (repealed 1989). Peters was convicted under Tennessee's general attempt statute, which at the time provided as follows: "If any person . . . attempt[s] to commit[] any felony or crime punishable by imprisonment in the penitentiary, where the punishment is not otherwise prescribed, he shall, on conviction, be punished by imprisonment in the penitentiary not exceeding five (5) years, or, in the discretion of the jury, by imprisonment in the county workhouse or jail not more than one (1) year." Tenn.

3

Stat. § 39-603 (repealed 1989); see State v. Staggs, 554 S.W.2d 620, 624 (Tenn. 1977) ("We hold that Sec. 39-603 is our general attempt statute."). Second degree burglary was a felony for purposes of the general attempt statute. See State v. Cole, 665 S.W.2d 407, 408 (Tenn. Cr. App. 1983).

At the time Peters was convicted, Tennessee's "law of criminal attempt, though sanctioned by various statutes, was judicially defined." State v. Reeves, 916 S.W.2d 909, 910-11 (Tenn. 1996). As defined by the Tennessee courts, the elements of criminal attempt were: "(1) an intent to commit a specific crime; (2) an overt act toward the commission of that crime; and (3) a failure to consummate the crime." Id. at 911. As required for application of ACCA, Peters's conviction for attempted second degree burglary was "punishable by imprisonment for a term exceeding one year." 18 U.S.C. § 924(e)(2)(B); see Rafferty v. State, 16 S.W. 728, 728 (Tenn. 1891) (construing former version of § 39-603 and holding that "[t]he fact that the punishment for the attempt is in the alternative, either by imprisonment in the penitentiary or by fine and imprisonment in the county jail, does not make it any less an offense punishable by imprisonment in the penitentiary, or take from it the characteristic of a felony").

As did the parties in James, which involved a conviction for attempted burglary under Florida law, the parties here agree that Peters's attempted burglary

4

conviction cannot be considered a "violent felony" under clause (i) of ACCA's definition because attempted second degree burglary under Tennessee law does not have "as an element the use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 924(e)(2)(B)(i); see James, ___ U.S. at ___, 127 S. Ct. at 1591. And as the Court recognized in James, attempted burglary cannot qualify as any of the crimes specifically enumerated in clause (ii). Id. That is because attempted burglary is not arson or extortion and does not involve the use of explosives. Nor does attempted burglary qualify as "burglary" under clause (ii) because it does not meet the ACCA definition of burglary set forth in Taylor v. United States, 495 U.S. 575, 598, 110 S. Ct. 2143, 2158 (1990): "an unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime." Attempted burglary is not Taylor-defined burglary because one of the required elements of attempted burglary under Tennessee law is "a failure to consummate the [underlying] crime." Reeves, 916 S.W.2d at 911; see James, ___ U.S. at ___, 127 S. Ct. at 1591 (noting that attempted burglary under Florida law is not Taylor-defined burglary because it requires that the defendant "'fai[l] in the perpetration or [be] intercepted or prevented in the execution' of the underlying offense").

Thus, the only question presented in this appeal, similar to the question

5

addressed by the Court in James with respect to Florida law, is whether attempted

second degree burglary, as defined by Tennessee law at the time of Peters's

conviction, falls within ACCA's clause (ii) residual provision for crimes that

"otherwise involv[e] conduct that presents a serious potential risk of physical

injury to another." 18 U.S.C. § 924(e)(2)(B)(ii).[2]

To answer this question, we must use the "categorical approach" adopted by

the Supreme Court for the purpose of defining other ACCA offenses. See James,

___ U.S. at ___, 127 S. Ct. at 1593. "Under this approach, we look only to the fact

of conviction and the statutory definition of the prior offense and do not generally

consider the particular facts disclosed by the record of conviction. That is, we

consider whether the elements of the offense are of the type that would justify its

inclusion within the residual provision, without inquiring into the specific conduct

of this particular offender." Id. at ___, 127 S. Ct. at 1594 (citations and internal

quotation marks omitted).

We must look first to Tennessee law to determine what type of conduct

constituted attempted burglary at the time of Peters's conviction. The general

attempt statute under which Peters was convicted is unhelpful for that purpose

---

[2] Although Peters does not so argue in this appeal, we note that the Court in James rejected the argument that attempt crimes are categorically excluded from the scope of § 924(e)(2)(B)(ii)'s residual provision.

6

because, as we noted above, the law of criminal attempt in 1981 was judicially, not statutorily, defined. At that time, Tennessee courts required as an element of attempted burglary that the defendant engage in an "overt act directed to [the] commission" of burglary. See Gervin v. State, 371 S.W.2d 449, 450 (Tenn. 1963). Without citing any authority that supports the proposition, Peters maintains that Tennessee's attempt statute is construed "in an extremely broad manner," so broad that in Peters's view "a defendant would be guilty of attempted burglary by merely collecting some burglar tools and driving around a neighborhood looking for an empty house." Peters Br. at 16. Based on this observation, Peters reasons that attempted burglary under Tennessee law is not a violent felony under ACCA because it does not "presen[t] a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B)(ii). We disagree with Peters's view of Tennessee law and thus his conclusion about the applicability of ACCA in this case.

The gist of Peters's argument, much like the petitioner's argument in James, is that in Tennessee a person can be convicted of attempted burglary by engaging in merely preparatory conduct — conduct that does not pose a physical risk to others. See James, ___ U.S. at ___, 127 S. Ct. at 1594 ("James contends that this broad statutory language sweeps in merely preparatory activity that poses no real danger of harm to others — for example, acquiring burglars' tools or casing a

7

structure while planning a burglary."). But that is not an accurate statement of the law in Tennessee today, nor is it an accurate statement of the law in Tennessee at the time of Peters's conviction in 1981. The leading case on criminal attempts in Tennessee at the time of Peters's conviction was Dupuy v. State, 325 S.W.2d 238 (Tenn. 1959), overruled by Reeves, 916 S.W.2d at 914 (recognizing Dupuy as the "best example" of Tennessee courts' pre-1989 interpretation of criminal attempt).[3] Although the typical phrasing of the overt act element of a criminal attempt, as recited in Gervin and other Tennessee cases, may seem fairly broad in a general sense — the act must be "directed at the commission of" burglary[4] — the Tennessee Supreme Court in Dupuy had significantly restricted the meaning and application of that element, stating that "[t]he overt act necessary to constitute an attempt to commit crime must go beyond mere preparation, and commission of the crime must be at least apparently possible to the reasonable apprehension of [the] accused." 325 S.W.2d at 240 (emphasis added). The Court in Dupuy characterized the overt act as "the direct movement toward the commission [of the crime] after the preparations have been made." Id. Citing Dupuy as the archetypal

_____

[3] In 1989, Tennessee's general attempt statute, § 39-603, was replaced with a substantive attempt statute, § 39-12-101, which displaces the judicially imposed "overt act" requirement in favor of a statutorily imposed "substantial step" requirement.

[4] See James, ___ U.S. at ___, 127 S. Ct. at 1594 (noting the breadth of the virtually identical language used in Florida's attempt statute — requiring "any act toward the commission" of burglary).

case on the application of the overt act requirement, the Tennessee Supreme Court in Reeves confirmed that, prior to 1989, "Tennessee courts [following the lead of Dupuy] construed the term 'overt act' very narrowly." 916 S.W.2d at 911 (emphasis added).

The Supreme Court in James similarly recognized that the Florida Supreme Court, applying Florida's attempt statute in the burglary context, has "considerably narrowed" the statute's broad language by requiring that a defendant engage in some "overt act directed toward entering or remaining in a structure or conveyance." James, ___ U.S. at ___, 127 S. Ct. at 1594 (citing Jones v. State, 608 So.2d 797, 799 (Fla. 1992)). The Court in James pointed out that this "narrowed" application of Florida's attempt statute confirms the fact that "[m]ere preparation is not enough" to sustain a conviction for attempted burglary in Florida. Id. Similarly, and contrary to Peters's argument on appeal, it is clear from the Tennessee case law that mere preparation would not have been enough to sustain a conviction for attempted second degree burglary in 1981. See Dupuy, 325 S.W.2d at 239 ("A mere preparation is not enough."); id. at 240 ("For example the procurement by a prisoner of tools adapted to breaking jail does not render him guilty of an attempt to break jail.").

We think that the "heightened standard," James, ___ U.S. at ___, 127 S. Ct.

9

at 1594, used by Florida courts to apply the overt act requirement of Florida's attempt statute in the burglary context is materially indistinguishable from the "very narro[w]," Reeves, 916 S.W.2d at 911, construction given to the overt act requirement by Tennessee courts at the time of Peters's conviction. In Florida, to be convicted of attempted burglary, a defendant must engage in some conduct "directed toward entering or remaining in a structure or conveyance." James, ___ U.S. at ___, 127 S. Ct. at 1594. This formulation of the rule is, in our view, merely another way of stating, in the burglary context, the overt act standard applied by Tennessee courts at the time of Peters's conviction. At that time, to be convicted of attempted burglary in Tennessee, a defendant must have been in such close proximity to the targeted structure that the "commission of the [burglary] [would have been] at least apparently possible to the reasonable apprehension of [the] accused." Dupuy, 325 S.W.2d at 240. Stated differently, it is inconceivable to think that, under Tennessee law, a burglary could have been "apparently possible to the . . . accused" unless the accused had engaged in some conduct substantially similar to that required under Florida law — conduct found by the Court in James to pose a serious potential risk of physical injury.

Our reading of Tennessee law is consistent with the conclusion reached by the Sixth Circuit in United States v. Bureau, 52 F.3d 584 (6th Cir. 1995), in which

10

the court was faced with the exact same question presented in this appeal. There, the court surveyed "affirmed convictions for attempted burglary in Tennessee, under both § 39-603 and its replacement" and concluded "that a defendant convicted of this crime likely <u>entered or nearly entered a building</u>." Bureau, 52 F.3d at 592 (emphasis added). On the basis of that survey, which confirms <u>Dupuy</u>'s restrictive interpretation of the overt act requirement, the Sixth Circuit in <u>Bureau</u> determined that attempted burglary, as defined by pre-1989 Tennessee law,[5] constitutes as a "violent felony" under ACCA's residual provision for crimes that "involv[e] conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B)(ii); <u>see</u> <u>Bureau</u>, 52 F.3d at 593.

Our reading of Tennessee law in this respect is also supported by <u>James</u>, in which the Supreme Court identified the Sixth Circuit — specifically, its decision in <u>Bureau</u> — as one of seven Courts of Appeal that "has construed an attempted burglary law <u>similar in scope to Florida's</u>." ___ U.S. at ___ & n.3, 127 S. Ct. at 1595 & n.3 (emphasis added).

The Supreme Court in <u>James</u> concluded that attempted burglary under Florida law is a "violent felony" under the residual provision of ACCA's clause (ii)

_____

[5] The court in <u>Bureau</u> also surveyed affirmed attempted burglary convictions under the post-1989, "substantial step" attempt statute, but we are not concerned with those cases because our focus is necessarily constrained to the law as it existed at the time of Peters's conviction.

11

because, as narrowly construed by the Florida courts, it "involves conduct that presents a serious potential risk of physical injury to another." Having determined that attempted second degree burglary, as defined by pre-1989 Tennessee case law, is materially indistinguishable from attempted burglary under Florida law, we too are bound to conclude, for the reasons stated by the Supreme Court in <u>James</u>, that Peters's 1981 conviction for attempted second degree burglary is a "violent felony" under the residual provision of clause (ii). <u>See</u> <u>James</u>, ___ U.S. at ___, 127 S. Ct. at 1594-96.

Peters's 180-month sentence is accordingly affirmed.

**AFFIRMED**